MARK A. NOBLE and THEODORE C. CORWIN, Respondents, *v.* GREAT AMERICAN INSURANCE COMPANY, Appellant.

First Department, April 21, 1922.

Corporations — action to compel defendant corporation to issue stock to which plaintiffs' assignor was at one time entitled to subscribe — complaint should have been dismissed — assignor living abroad — stock sold to third person after expiration of time within which assignor could exercise her rights — complaint drawn on theory that defendant had agreed to hold stock until return of assignment of rights by assignor — no proof of such assignment — assignor was alien enemy at all times mentioned in complaint and assignment was void under Trading with Enemy Act — recovery cannot be had on theory that defendant owed duty to notify Alien Property Custodian before disposing of stock — defendant had no knowledge that assignor was enemy alien and had made all inquiries that could be required — such issue outside pleadings — finding that defendant owed such duty not justified in any event — assignor, by delay, waived rights to subscribe — defendant complied strictly with statute.

In an action to compel the defendant corporation to issue certain shares of increased capital stock for which plaintiffs' assignor, a stockholder, was at one time entitled to subscribe, which right she had assigned to plaintiffs, the complaint should have been dismissed, where it appeared that the assignor was living abroad and failed to exercise her rights in time and the defendant sold the shares to a third person in good faith and in full compliance with the Stock Corporation Law; that the complaint was predicated on the theory that defendant had agreed with the assignor's agent to hold the stock subject to the return of the assignment to him of her rights in the increased capital stock which was to be executed by her in Holland, but no proof was given of such agreement; and that the assignor was, during all the times mentioned in the complaint, an alien enemy; for there was a failure to prove the essential allegation of the complaint, and, moreover, the transfer of the subscription warrant by plaintiffs' assignor was absolutely void under the act of Congress of October 6, 1917, known as the Trading with the Enemy Act.

A recovery allowed by the trial court upon the theory that the defendant owed a duty to notify the Alien Property Custodian of the subscription rights of the assignor before disposing of the stock cannot stand, as the undisputed evidence shows that the defendant had no knowledge at the time of disposing of the stock that the assignor was an enemy alien; and, had there been a duty of inquiry, the defendant did all that could be required. Furthermore, no such issue was tendered by the pleadings; and, if there had been such an issue, the theory adopted by the trial court would have no legal justification, for the assignor failing to exercise her rights in time must be deemed to have waived them and the defendant complied strictly with the statutory requirements throughout the entire transaction.

MERRELL, J., dissents.

APPEAL by the defendant, Great American Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff,

entered in the office of the clerk of the county of New York on the 23d day of June, 1921, upon the decision of the court rendered after a trial at the New York Special Term.

*Shearman & Sterling* [*John A. Garver* of counsel; *Chauncey B. Garver* with him on the brief], for the appellant.

*Howard Nieman* [*James A. O'Gorman* of counsel; *Lanman Crosby* with him on the brief], for the respondents.

GREENBAUM, J.:

The plaintiffs, dealers in unlisted securities, who claim to have succeeded to the rights of one Rolanda Noeggerath, a stockholder of the defendant Great American Insurance Company, brought this action to compel the issuance to them of 213 shares of the increased capital stock of the defendant to which their assignor was entitled to subscribe. The capital stock of the corporation was duly increased on or about the 24th day of October, 1918, from $2,000,000 to $5,000,000 in strict accordance with the statutory requirements. Rolanda Noeggerath (who for convenience will be referred to as the " assignor ") was at the time of the increase of the capital stock and for a long time prior thereto the owner of 142 shares of the stock of the defendant company and was entitled to subscribe to her proportionate share of the increased issue, to wit, 213 shares.

It is undisputed that due notice to the assignor was given of the meeting of the stockholders of the corporation called to be held on October 24, 1918, for the purpose of considering the question of increasing its capital stock, by registered letter dated October 7, 1918, properly addressed to her in care of A. Zinsser, Jr., Yorkville Bank, 1511 Third avenue, New York city; that on or about October 24, 1918, notice was duly mailed to her informing her that the said stockholders' meeting had been held, and that a resolution had been duly passed thereat to increase the capital stock of the defendant from $2,000,000 to $5,000,000, and that the stockholders would be given an opportunity to subscribe for such increased capital stock at the rate of $150 per share in proportion to their holdings of the old stock, which right to subscribe must be exercised not later than November 18, 1918, at which time fifty per cent of the subscription price would be payable, and that the subscription would have to be paid in full not later than December 16, 1918, and stating that warrants covering such subscription rights would be issued shortly, and that thereafter and on or about November 4, 1918, such warrants were duly mailed to the stockholders, including the assignor. There is no dispute that all of the aforementioned notices, as well as a warrant, were duly

received by Mr. Zinsser, who according to the complaint was the agent of plaintiff's assignor and represented her under an authorization theretofore made by her. The subscription warrants, the form of which had been duly approved by the directors of the defendant, contained the following provision in heavy faced print: " This warrant will become wholly void and of no value if the right to subscribe is not exercised and at least 50% paid thereon on or before November 18th, 1918."

In a letter dated October 24, 1918, Zinsser wrote to the defendant, stating: " As you know I am representing Mrs. Rolanda Noeggerath, one of your stockholders. Mrs. Noeggerath, as far as I know, is at present living in Holland, and I have no power of attorney from her to sell the rights for the new issue of the stock of your company. Is it possible that I can protect her interest in some way, so that your company will recognize the sale of the rights for her account." In response to that letter the defendant wrote to Zinsser under date of October 29, 1918, acknowledging receipt of the letter of the twenty-fourth and stating: " We understand that Mrs. Noeggerath is not an enemy alien and the officers of the company will, therefore, not insist upon the exercise of her rights by the 18th of November, but will extend her right to subscribe or dispose of the rights for a reasonable time, provided that the stock is finally taken up and paid for by the 16th of December." Zinsser replied by letter dated October 30, 1918, stating: " I am afraid that I did not make myself sufficiently clear in my letter to you. As I understand it, your company will issue rights warrant in the course of the next few days, and my question was whether my endorsement on this warrant with Rolanda Noeggerath, by myself as attorney, would be recognized by your company, if presented by some purchaser." To that letter the defendant replied under date of October 31, 1918, stating: " We concluded from your other letter that as Mrs. Noeggerath was located so far away from New York there would not be time for her to exercise her rights by the 18th of November and therefore we granted an extension of time to not later than the 16th of December. The warrants evidencing the right of Mrs. Rolanda Noeggerath to subscribe to the increased new stock, to which she is entitled, will be mailed to you on the 2d or the 4th proximo. If you, as attorney for Mrs. Nöeggerath, are to subscribe and pay for her full allotment of new stock, such subscription will be recognized by us, but if you, as attorney for Mrs. Noeggerath, are to assign her subscription rights you can scarcely expect us to recognize such assignment, inasmuch as you have informed us that you have no authority in writing to make such assignment." Zinsser replied by letter dated November 1, 1918, acknowledging defendant's

letter of October thirty-first, and stating that he was very sorry that the company took the position which it did, and further stating:

" My not being able to sell the rights of Mrs. Noeggerath will mean a loss to her of about twenty odd thousand dollars. If you should reconsider to recognize my assignment for the sale of the rights, I stand ready to deposit this money in any bank or trust company in Mrs. Noeggerath's name or in any way your company should direct. Even if I could communicate with Mrs. Noeggerath, I am quite sure that she is not in a position to take up this new stock. Trusting that you will take this matter up again and thanking you in advance for any trouble you are taking in this matter, I am, Very respectfully yours,

"(signed)    AUGUST ZINSSER."

The complaint alleged that the defendant agreed with Zinsser to hold the 213 shares of stock subject to the return to Zinsser of an assignment of the assignor's rights to be executed by her in Holland. There was, however, no evidence given in behalf of plaintiffs in support of that allegation, and the court explicitly found that no such agreement had been made.

On or about the 8th day of November, 1918, plaintiffs entered into an agreement with Zinsser, as agent for the said Rolanda Noeggerath, for the purchase of her subscription rights, and agreed to pay therefor the sum of $27,690.

On November 19, 1918, all of the 30,000 shares of the increased capital stock had been subscribed and paid for in full at $150 a share by stockholders of defendant or their assigns, with the exception of 486 shares which included the 213 shares in controversy. As to what action defendant took in respect of these unsubscribed shares will appear from the following findings made by the trial justice:

" XIII. On December 19th, 1918, the Finance Committee of the defendant, upon being informed by the president of the defendant that all except 486 shares of the increased stock had been issued and paid for, and that it was of great importance that the remaining 486 shares should be issued and paid for in time for the Superintendent of Insurance to report before the end of the calendar year 1918 that the defendant had a paid-in capital stock of $5,000,000, passed a Resolution authorizing the sale of the said 486 shares to the firm of Potter, Choate & Prentiss, at $150 a share, and in further consideration of their agreeing to hold such shares for a period of 30 days, during which time any of the stockholders who had been entitled to subscribe to any of the said shares might purchase from Potter, Choate & Prentiss the number of shares

to which they had been entitled to subscribe at a price of $150 a share plus a commission of 5% and interest.

" XIV. On or about December 20th, 1918, the said 486 shares of the increased stock of the defendant * * * were sold by the defendant to the said firm of Potter, Choate & Prentiss for $150 a share, which was paid to the defendant in cash, and the defendant thereupon issued certificates for the said 486 shares to the said firm of Potter, Choate & Prentiss.

" XV. The action of the Finance Committee in selling the said 486 shares was duly approved by the Board of Directors of the defendant, at a meeting held on January 29th, 1919."

On or about the 8th of February, 1919, plaintiffs received from August Zinsser, " as agent for the said Rolanda Noeggearth and in her behalf," a power of attorney and assignment of said warrant of subscription for 213 shares of the increased capital stock, and according to plaintiffs, when the said assignments were so delivered to the plaintiffs, they learned for the first time that the said Rolanda Noeggerath was not residing in Holland, but residing in Munich, Germany, and was, therefore, an alien enemy within the meaning of the Federal Trading with the Enemy Act of October 6, 1917 (40 U. S. Stat. at Large, 411, chap. 106, as amd.), and that thereafter and on or about the 18th day of March, 1919, a license was obtained from the War Trade Board, permitting the purchase of the assignor's rights of subscription for the 213 shares of the stock of the defendant company, the proceeds of the sale, however, to be held subject to instructions from the Alien Property Custodian.

The complaint was predicated upon the theory that the defendant had agreed with Zinsser to hold the 213 shares of stock subject to the return of the assignment of her rights to be executed by Mrs. Noeggerath. But the fact, as we have heretofore stated as found by the court, was that no such agreement had been made. It seems to us that upon such a finding the complaint should have been dismissed.

Other undisputed facts, as specifically found by the trial court, were that " at all the times mentioned in the complaint the said Rolanda Noeggerath was an American citizen residing in Munich, Germany, and was an alien enemy within the meaning of the act of Congress of October 6th, 1917, known as the Trading with the Enemy Act; " that " when the said August Zinsser, Jr., received from Rolanda Noeggerath the said assignment executed by her, he knew that she was an alien enemy within the meaning of the Trading with the Enemy Act; and that the plaintiffs had the same knowledge when they received from Zinsser the said assignments and presented them to the defendant."

The following fact was also found: " On or about January 20th, 1919, the said August Zinsser, Jr., received, from the American Vice Consul in Rotterdam, a letter dated January 8th, 1919, stating that the said Rolanda Noeggerath was then residing at Munich, Bavaria, and thus giving positive information that she was an alien enemy within the meaning of the Trading with the Enemy Act."

The learned court at Special Term found as a conclusion of law: " That when the defendant received the above mentioned letter from A. Zinsser, Jr., dated November 1st, 1918, the defendant was put upon inquiry as to the then whereabouts of the said Rolanda Noeggerath and thereupon the defendant became charged with all the knowledge which a diligent investigation would disclose, including knowledge of the fact that the said Rolanda Noeggerath was an alien enemy at that time. That thereupon it became the defendant's duty to notify the Alien Property Custodian of the subscription rights which had attached to the stock standing in the name of the said Rolanda Noeggerath on the defendant's books."

Nothing appears in the letter of November first which suggests that Mrs. Noeggerath was an enemy alien. On the contrary, the evidence is that Zinsser's position then was that, so far as he knew, Mrs. Noeggerath was in Holland, and there was not the slightest intimation then given that she was living in Germany.

We are of opinion that upon the undisputed facts the conclusion reached by the learned court cannot stand. In the first place there was no such issue tendered by the pleadings as that implied in that conclusion. It has already been shown that the complaint was based upon the ground that the defendant had agreed to extend the time within which the plaintiffs' assignor might complete her subscription. Such an agreement was not proved, and the court so found. Plaintiffs have thus obtained a recovery upon a totally different cause of action from that which they brought into court. There was no motion made to amend the complaint, nor was there any motion made to conform the pleadings to proofs, if there were any, which would warrant an amendment.

But, assuming that there was an issue which would justify the court's consideration of the question of law involved in the finding above quoted, we are of opinion that there would be no legal justification therefor. There is no doubt that, in the case of an increase in the capital stock of a corporation, each stockholder is entitled to subscribe to his proportionate number of the new shares upon the same terms as the other stockholders. But this right is subject to the conditions imposed by the majority of the stockholders in authorizing the increase. " A majority of the stockholders, as part of their power to increase the stock, may

attach reasonable conditions to the disposition thereof, * * *. The new stock belongs to the old stockholders in proportion to their holding of old stock, subject to compliance with the lawful terms upon which it is issued." (*Stokes* v. *Continental Trust Co.*, 186 N. Y. 285, 298, 299.)

Section 63 of the Stock Corporation Law authorizes a majority of the stockholders to increase the capital stock at a meeting held upon two weeks' notice to the stockholders published and mailed to their last known post office address.

In the case at bar the acknowledged agent of the plaintiffs' assignor had received all the notices required by the statute and had actual notice of the action of the stockholders to increase the stock and of the terms and conditions under which such increase was to be effectuated. If a stockholder fails to exercise his right within the time fixed, he must be deemed to have waived his right. (*Hoyt* v. *Shenango Valley Steel Co.*, 207 Penn. St. 208; *Sewall* v. *Eastern R. R. Co.*, 9 Cush. 5; *Baltimore City Passenger Ry. Co.* v. *Hambleton,* 77 Md. 341; *Hart* v. *St. Charles St. Ry. Co.*, 30 La. Ann. 758.)

In *Pearson* v. *London & Croydon Ry. Co.* (14 Sim. 541), an English case, a notice of the right to subscribe to new stock was issued on July twenty-fifth, which contained the statement that the right must be exercised on or before August tenth. The court held that a stockholder lost that right by not subscribing before the last-mentioned date, notwithstanding that he was in Naples, and actually did not receive the notice until August twelfth. There is no claim made, nor any fact found in the case that the notice was not sent within a reasonable time or that the conditions attached to the right to subscribe were unreasonable. It has already been shown that as a matter of fact the defendant was notified by Mr. Zinsser, the agent of plaintiffs' assignor, that he believed she was a resident of Holland. Hence when the 213 shares were sold on December 20, 1918, the defendant had no reason to suspect that the assignor was residing in Germany.

Besides, if it be assumed that the defendant was charged with the active duty of inquiry as to the whereabouts of Rolanda Noeggerath, what more could it have done than to accept the word of her agent as to his belief as to where she lived? Her agent was presumably the best source for ascertaining the place of her residence. The good faith of the defendant is clearly indicated by the fact that it extended the assignor's time for subscribing and paying for the stock to December 16, 1918, in reliance upon Zinsser's statement that he believed that she was residing in Holland. It is difficult to understand how the defendant could

have been expected to notify the Alien Property Custodian of the subscription rights which had attached to the stock standing on the defendant's books in Mrs. Noeggerath's name, when defendant had no reason to think that she was an enemy alien. If any one owed a duty to notify the Alien Property Custodian, it was Zinsser, the agent of plaintiffs' assignor. No case has been cited to us in support of the legal proposition that any duty devolved upon the defendant to discover the whereabouts of its stockholder under the circumstances here appearing. Even if there were any such duty upon defendant, the burden devolved upon the plaintiffs to show that the defendant had notice of the German residence of its shareholder before December 20, 1918. But there are other reasons why the plaintiffs are not entitled to recover. The learned trial court correctly found that " at all times mentioned in the complaint said Rolanda Noeggerath was an American citizen residing in Munich, Germany, and was an alien enemy " within the meaning of the act. The transfer of the subscription warrant by plaintiffs' assignor in Munich on December 21, 1918, was, therefore, absolutely void within the meaning of the act of Congress of October 6, 1917, known as the Trading with the Enemy Act.

It does not require the citation of many authorities in support of the rule that no cause of action may be maintained upon an act which is in violation of the law. (*McMullen* v. *Hoffman*, 174 U. S. 639; *Messersmith* v. *American Fidelity Co.*, 187 App. Div. 35; *Hart* v. *City Theatres Co.*, 215 N. Y. 322.)

The judgment must be reversed on the law and the facts, with costs, and the findings of fact and the conclusions of law contained in the decision excepted to by the defendant are reversed, and the proposed findings of fact and the conclusions of law requested by the defendant, which were refused by the trial court, must be made and the complaint dismissed, with costs.

LAUGHLIN, DOWLING and SMITH, JJ., concur; MERRELL, J., dissents.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.