## FABER v. UNITED STATES.

### No. L–120.

Court of Claims.
April 8, 1935.

604

George H. Emerson, of New York City, for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

BOOTH, Chief Justice.

The plaintiff is the executor of the estate of Jenny Faber, deceased. In this suit recovery of a judgment for $7,653.45 is sought, said sum being the amount of an estate tax paid under protest by the Alien Property Custodian to the Commissioner of Internal Revenue on April 16, 1925. No jurisdictional issue is involved.

Jenny Faber, plaintiff's testatrix, was residing at Stein, near Nürnberg, Bavaria, Germany, at the time of her death on March 8, 1919. She was a nonresident citizen of the United States. On the date of her death she owned two parcels of real estate in the city of New York, of the appraised value of $320,000, encumbered by mortgages for $173,356.92, and had on deposit an open account of $80,945.47 with the firm of Eberhard Faber, of New York.

Prior to her demise, all of the decedent's property in New York was seized by the Alien Property Custodian, acting under the Trading with the Enemy Act, and subsequently on December 23, 1924, the Custodian sold and conveyed the realty. It is conceded that with the exception of a few insignificant and practically valueless articles of personalty, the above constituted the entire estate of decedent within the United States.

The record discloses no attack upon the legality of the proceedings involving the taking over of the testatrix' property by the Custodian, admitting that under the provisions of the Trading with the Enemy Act testatrix' residence in a country with which the United States was at war defined her status as that of an enemy. In 1921 the plaintiff, as executor of the estate of Jenny Faber, filed an estate tax return in the offices of the Commissioner of Internal Revenue in Washington and the collector of the Second district in New York. In this return plaintiff deducted $50,000 and the full amount of the mortgages on the realty from the value of the gross estate, returning an estate tax liability of $1,733.32. Subsequently in 1924, in an amended return plaintiff claimed additional deductions of the cost of administration, reducing the tax liability to $1,341.93.

On April 16, 1925, the Alien Property Custodian paid to the United States a levied estate tax upon this estate of $7,653.45. The computation of the tax was as follows: Real property, $320,000; accrued rentals, $4,386.-28; cash, $13,209.67; total gross estate, $337,595.95. The Commissioner determined that administration expenses of $186.95, added to $173,356.92, the value of the mortgages on the realty, produced a sum in excess of 10 per cent. of the value of that part of decedent's gross estate which on the date of her death was situated in the United States, and that the gross estate wherever situated did not exceed ten times the value of that part of her gross estate situated in the United States, and allowed as a deduction 10 per cent. of the gross estate, i. e., $33,759.60, determining a net taxable estate of $303,836.35 and an estate tax of $7,-653.45, which was paid under protest.

A timely claim for refund was filed by plaintiff and denied by the Commissioner. The plaintiff assails the validity of the tax upon two grounds: First, it is argued that on the date of the death of plaintiff's testatrix she was not the owner nor in the possession of any estate in the United States, title and possession being in the Alien Property Custodian, and therefore the estate of the decedent was not taxable under the revenue acts in force at the time.

Next it is contended that section 403 (b) (1) of the Revenue Act of 1918 (40 Stat. 1098), applicable in this case, is unconstitutional as to nonresident citizens of the United States, because it violates article 4, § 2 (1) of the Constitution; the article cited

reading as follows: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

The gravamen of the complaint is that limitation of deduction allowances to nonresident citizens is arbitrary and discriminatory, denying to nonresident decedents substantial deductions from the gross estate allowed to residents.

█ Plaintiff in the brief approaches and argues the issues of the case as though they were res integra. The assertion made is that as to enemy aliens the courts have sustained the constitutionality of the taxing acts, but not so as to an American citizen made an enemy by the Trading with the Enemy Act. The enemy status of Jenny Faber in war times, so far as her property in the United States was concerned, was precisely the same as though she had been an alien enemy. The right of seizure, sale, and management of property within the United States applied with the same vigor and in the same manner to both enemies alike. Congress provided that the word "enemy" in the act included "any individual * * * resident within the territory * * * of any nation with which the United States is at war." Section 2 (50 USCA Appendix § 2). Congress designedly employed the words "individual resident," and obviously this comprehended a citizen of the United States as well as an alien.

Section 403 (b) (1) of the Revenue Act of 1918 is as follows:

"Sec. 403. That for the purpose of the tax the value of the net estate shall be determined—* * *

"(b) In the case of a nonresident, by deducting from the value of that part of his gross estate which at the time of his death is situated in the United States—

"(1) That proportion of the deductions specified in paragraph (1) of subdivision (a) of this section which the value of such part bears to the value of his entire gross estate, wherever situated, but in no case shall the amount so deducted exceed 10 per centum of the value of that part of his gross estate which at the time of his death is situated in the United States." 40 Stat. 1098.

Section 24 of the Trading with the Enemy Act of 1917 (40 Stat. 411), as added by the Winslow Act of March 4, 1923, § 2 (42 Stat. 1511, 50 USCA Appendix § 24 (a), reads as follows: "§ 24. The Alien Property Custodian is authorized to pay all taxes (including special assessments), heretofore or hereafter lawfully assessed by any body politic against any money or other property held by him or by the Treasurer of the United States under this Act, and to pay the necessary expenses incurred by him or by any depositary for him in securing the possession, collection, or control of any such money or other property, or in protecting or administering the same. Such taxes and expenses shall be paid out of the money or other property against which such taxes are assessed or in respect of which such expenses are incurred, or (if such money or other property is insufficient) out of any other money or property held for the same person, notwithstanding the fact that a claim may have been filed or suit instituted under this Act."

The Settlement of War Claims Act of 1928 (45 Stat. 254, in section 18 (b) and (e), 50 USCA Appendix § 24 (b, e), provides as follows:

"Sec. 18. Section 24 of the Trading with the Enemy Act, as amended, is amended by inserting '(a)' after the section number and by adding at the end of such section new subsections to read as follows:

" '(b) In the case of income, war-profits, excess-profits, or estate taxes imposed by any Act of Congress, the amount thereof shall, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, be computed in the same manner (except as hereinafter in this section provided) as though the money or other property had not been seized by or paid to the Alien Property Custodian, and shall be paid, as far as practicable, in accordance with subsection (a) of this section. Pending final determination of the tax liability the Alien Property Custodian is authorized to return, in accordance with the provisions of this Act, money or other property in any trust in such amounts as may be determined, under regulations prescribed by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury, to be consistent with the prompt payment of the full amount of the internal-revenue taxes. * * *

" '(e) In case of any internal-revenue tax imposed in respect of property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, or seized by him, and imposed in respect of any period (in the taxable year 1917 or any succeeding taxable year) during which such property was held by him or by the Treasurer of the

606

United States, no interest or civil penalty shall be assessed upon, collected from, or paid by or on behalf of, the taxpayer; nor shall any interest be credited or paid to the taxpayer in respect of any credit or refund allowed or made in respect of such tax.'"

The Circuit Court of Appeals for the Fourth Circuit decided the identical questions now insisted upon by plaintiff, with the one exception that the plaintiff in Chemische Fabrik Von Heyden, Aktiengesellschaft et al. v. Tait, 64 F.(2d) 295, 296, certiorari denied, 290 U. S. 648, 54 S. Ct. 65, 78 L. Ed. 562, was admittedly an alien enemy. The language of the opinion is apropos and we quote the following excerpt therefrom:

"The contention of the appellant is that the case is primarily a tax case and that the deduction was improperly made because the German corporation was not the owner of any property or the recipient of any income in the United Sates in the year 1919, and that therefore no income tax could be lawfully assessed against it. It is said that the statutes which authorized the Alien Property Custodian to pay all taxes lawfully assessed against the property held by him have no application to such a case because the title to the property had become vested in the United States and was not subject to lawful assessment; and that the Settlement of War Claims Act, in so far as it directs that the gain from a sale of the property shall be subject to income tax, is unconstitutional because the Sixteenth Amendment merely gave Congress power to levy and collect taxes on incomes, and no income was received by the appellant in the United States in the year of the sale.

"This argument loses sight of the broad power of the government to seize and appropriate enemy properties without any compensation to the owners. United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131. Congress had the undoubted right to confiscate such property completely or to impose any condition less onerous as it saw fit; and so it was well within the scope of its authority when it measured the deduction by the size of the burden which it placed upon the property of its own citizens in the form of taxation. Even if we assume that the German corporation had lost all title to the property and had no income therefrom in the year 1919, in the sense in which the term is used in the income tax law, still the deduction made by the Alien Property Custodian was lawful, for it carried into effect the obvious purpose of the statutes which Congress had the power to enact."

There are many other cases cited in the briefs of counsel. To refer to and discuss them would, we think, serve no useful purpose. Congress is not obliged to grant deductions from gross to ascertain net income, and we think it is long since settled that a law applicable alike to all persons in the same class and circumstances is not to be regarded as arbitrary and capricious. Burnet v. Thompson Oil & Gas Co., 283 U. S. 301, 51 S. Ct. 418, 75 L. Ed. 1049.

The petition will be dismissed. It is so ordered.