## UNITED STATES v. KREPPER.

### No. 9032.

Circuit Court of Appeals, Third Circuit.

Argued April 18, 1946.

Re-argued Oct. 30, 1946.

Decided Dec. 11, 1946.
Writ of Certiorari Denied March 3, 1947.
See 67 S.Ct. 865.

960

George R. Sommer, of Newark, N. J. (George Such Pearse, of Newark N. J., on the brief), for defendant-appellant.

Charles A. Stanziale, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., and Vincent E. Hull, Asst. U. S. Atty., both of Newark, N. J., on the brief), for appellee.

Before BIGGS and KALODNER, Circuit Judges, and GOURLEY, District Judge.

GOURLEY, District Judge.

The appellant, Carl Emil Ludwig Krepper, was convicted, after trial by jury on March 14, 1945, on two separate counts in an indictment drawn under two separate statutes or Acts of Congress.

Count I alleged a violation of Title 50 U.S.C.A. Appendix, § 3(c), a section of the "Trading with the Enemy Act". Count II alleged a violation of Title 50 U.S.C.A. Appendix, § 618, part of the "First War Powers Act, 1941" and dealing specifically with "censorship".

On March 23, 1945, nine days after conviction, the defendant appeared before the Honorable Thomas F. Meaney, United States District Judge for the District of New Jersey, and on each Counts I and II was sentenced to imprisonment for 10 years,

said sentences to run concurrently with each other and consecutively with the sentence imposed on said date with Indictment designated as No. 3000c. (We are not concerned directly with Indictment No. 3000c in the issues now before the Court.) The appellant asserts that the conviction should be reversed in that the District Court erred in the following respects:

1. That the Court erred in refusing to dismiss Count II of the Indictment which was based upon an Act not yet in effect.

2. That the Court erred in denying defendant's motion to direct a verdict on the ground that there was no proof to support the allegations of either Count of the Indictment.

3. That the Court erred in denying defendant's motion as to Count I of the Indictment on the ground that as a matter of law the defendant could not be guilty of the offense charged.

4. That the Court erred in refusing to dismiss Count I of the Indictment where an exception appeared in the statute upon which the Indictment was drawn, and where such exception was not pleaded in the Indictment.

5. That the Court erred in striking from each of the two Counts of the Indictment certain phraseology which was included in the Indictment returned by the Grand Jury.

The Court will first refer in some detail to the testimony which was introduced at the time of trial.

It appears that the defendant is married and his wife, a citizen of the United States, had been residing at Budelsdorf, Germany, with the defendant. That on or about the 16th day of December, 1941, the defendant returned from Germany and established a residence at Carteret, New Jersey, with a Mrs. Hilda Frey and her husband. It further appears that the defendant was married to the mother of the husband of Mrs. Hilda Frey, and that Mrs. Bertha Krepper, wife of the defendant, returned to Germany in March of 1941. It appears Mrs. Hilda Frey, prior to the time that the defendant came to her home on or about December 16, 1941, had been accustomed to sending letters to Mrs. Bertha Krepper in Germany,

said letters were written directly to Mrs. Bertha Krepper, with the address being Budelsdorf, Rensburg, Germany. However, after the defendant came to the home of Mrs. Hilda Frey on or about December 16, 1941, and when the letter involved in this proceeding was written by Mrs. Hilda Frey to Mrs. Bertha Krepper, the address which was placed on the letter was Mrs. Bertha Krepper, c/o Reverend Kloess, Barcelona, Spain. It further appears that said address was secured by Mrs. Hilda Frey from the defendant. That within a week after the defendant established his residence at the home of Mrs. Hilda Frey, while she was engaged in writing a letter to Mrs. Bertha Krepper, the defendant suggested or told Mrs. Frey to make certain comments in the letter to Mrs. Krepper. According to the testimony of Mrs. Frey, the defendant told her to tell Mrs. Krepper in the letter which she was writing that the defendant had arrived safely in the United States, and that the defendant was sending greetings to Pastor Kaiser and some other persons which the witness, Mrs. Hilda Frey, could not remember. The witness, Mrs. Hilda Frey, testified in the first instance that the letter was written within the first week after the defendant returned on December 16, 1941, from Germany, and in another instance that the letter was written on December 19, 1941. The witness, Mrs. Frey, furthermore testified that she placed in the letter any statement that the defendant suggested to her, and that the letter was written in the presence of the defendant. In one part of the testimony Mrs. Frey stated that the defendant told her to send greetings to Pastor Kaiser and some other people, while in other parts of the testimony she stated that independently in her own mind she had no recollection of setting forth in the letter that greetings were sent to Pastor Kaiser, and that the only way that she knew that greetings were sent to Pastor Kaiser in said letter was due to the fact that she wrote in the letter whatever the defendant suggested. That since the defendant had said in a previous trial that the defendant had told her to write the message referred to, to Pastor Kaiser, she must have complied with his request.

Furthermore, it appears that the defendant made oral statements and a statement in writing to a member of the Federal Bureau of Investigation pertaining to the letter which contained the statements that resulted in the Indictment being returned against the defendant, which is involved in the matters now before this Court for consideration. At the time of trial the oral and written admissions of said defendant were testified to by an agent of the Federal Bureau of Investigation, and that part of the written admission which was relevant to the issues joined was read into the record, said statement of the defendant being as follows: "The only suggestions I recall making to Mrs. Frey in connection with these letters were made shortly after I arrived in the United States when she wrote a letter sometime in January, February or March, 1942. I, of course, told her to advise my wife that I had arrived safely in the United States, and along with names of other friends in Germany I told her to send my greetings to Pastor Kaiser."

Neither Mrs. Hilda Frey nor the defendant had received any authority from the President of the United States, or the Treasury Department of the United States, to send a letter to Mrs. Bertha Krepper, directly or indirectly, in the Country of Germany. It further appears, from statements made to the agents of the Federal Bureau of Investigation by the defendant, that the defendant stated that "Pastor Kaiser" was a code expression. That it referred to a friend of the defendant in Germany by the name of Walter Kappe. That the defendant had informed his wife before leaving Germany that if the words "Pastor Kaiser" appeared in any of the letters written by the defendant to his wife, it referred to Walter Kappe. The defendant also admitted in his statement that he had an understanding with his wife that if she desired to refer in any of her letters to the defendant about Walter Kappe, she should use the words "Pastor Kaiser". The defendant in his statement admitted that in returning from Germany he traveled through Barcelona, Spain, where he had met a minister by the name of Reverend Ernest Kloess, and that he had arranged

with Pastor Kloess to act as intermediary whereby all letters which the defendant would write to Germany, and all letters written from Germany to the defendant would be forwarded to Pastor Kloess, who in turn would send the letters either to the defendant in the United States or the wife of the defendant in Germany, such as the case might be.

Indictment No. 2884c is the Indictment under which the defendant was tried, convicted and sentenced, and which is now before the Court for consideration. It is, therefore, advisable to refer to said indictment in detail.[1]

The first Count of the Indictment is drawn under the provisions of Title 50 U.S.C.A. Appendix § 3, Paragraph c.[2]

---

[1] "In the United States District Court for the District of New Jersey

 November Term, 1944

United States of America ⎱ ss
District of New Jersey ⎰

In the District Court of the United States of America in and for the District of New Jersey, at the November Term Thereof, in the year 1944.

The Grand Jurors of the United States of America, Second Panel, duly empaneled, sworn and charged to inquire in and for the said District of New Jersey, upon their oaths present,

 Count I

That heretofore, to wit, on or about the 19th day of December, 1941, in the District of New Jersey and within the jurisdiction of this Court,

 Carl Emil Ludwig Krepper

the defendant herein, without obtaining the prior license or consent of the President of the United States of America, did unlawfully send and transmit and attempt to send and transmit out of the United States, and cause persons acting at his instigation and under his direction and control and on his behalf and in furtherance of a joint or common scheme or enterprise to send and transmit and attempt to send and transmit out of the United States, a communication which was intended for or to be delivered to enemies of the United States and allies of enemies of the United States in Germany and Spain.

Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States. (Sec. 3(c), Title 50 App. United States Code)

 Count II

And the Grand Juror aforesaid upon their oaths aforesaid, do further present:

That heretofore, to wit, on or about the 19th day of December, 1941, at the District of New Jersey and within the jurisdiction of this Court,

 Carl Emil Ludwig Krepper

the defendant herein, did unlawfully, wilfully and knowingly use and attempt to use in a communication between the United States and Germany, being sent by the defendant and persons acting at his instigation and under his direction and control and on his behalf and in furtherance of a joint or common scheme or enterprise, a code and other devises for the purpose of concealing from censorship, under rules and regulations established by the President of the United States, the true and intended meaning of such communications.

Contrary to the form of the statute in such case made and provided and against the peace and dignity of the United States. (Sec. 618, Title 50 United States Code, App.)

 /s/ Thorn Lord
 United States Attorney"

[2] "For any person (other than a person in the service of the United States Government or of the Government of any nation, except that of an enemy or ally of enemy nation, and other than such persons or classes of persons as may be exempted hereunder by the President or by such person as he may direct), to send, or take out of, or bring into, or attempt to send, or take out of, or bring into the United States, any letter or other writing or tangible form of communication, except in the regular course of the mail; and it shall be unlawful for any person to send, take, or transmit, or attempt to send, take, or transmit out of the United States, any letter or other writing, book, map, plan, or other paper, picture, or any telegram, cablegram, or wireless message, or other form of communication intended for or to be delivered, directly or indirectly, to any enemy or ally of enemy: Provided, however, That any person may send, take, or transmit out of the United States anything herein forbidden if he shall first submit the same to the President, or to such officer as the President may direct, and shall obtain the license or consent of the President, under such rules and regulations, and with such exemptions, as shall be prescribed by the President."

The second Count of the Indictment is drawn under the provisions of Title 50 U.S.C.A. Appendix § 618.[3]

On December 15, 1944, said Indictment was returned and on March 9, 1945, counsel for the Government, in the presence of counsel for the defendant, by way of oral motion asked leave of Court to amend Indictment No. 2884c which refers to the date December 19, 1941, by deleting from each of the Counts of said Indictment the phrase "in furtherance of a joint or common scheme or enterprise". Counsel for the Government contended to the Court that such language in the Indictment was surplusage and no reference to such language is contained in the Act under which either Counts of the Indictment were drawn, more particularly Title 50 U.S.C.A. Appendix § 3(c), and Title 50 U.S.C.A. Appendix § 618.

At the time of hearing before the Court on March 9, 1945, pertaining to the matter just mentioned, counsel representing the defendant requested an opportunity to review the Indictment and, as a result of which, Court was adjourned. In the afternoon on the same date, March 9, 1945, counsel representing the defendant stated to the Court that they had reviewed the Indictment and the law, and were, therefore, perfectly satisfied and agreeable that the phraseology "in furtherance of a joint or common scheme or enterprise" be deleted from said Indictment.

The trial on Indictment No. 2884c commenced on March 14, 1945, and on the face of the Indictment in connection with each Count, there appear brackets in a green pencil crayon marking before the word "in" and after the word "enterprise" of the following phrase: "in furtherance of a joint or common scheme or enterprise."

After the Court had completed the charge, the jury had retired and immediately following the retiring of the jury, the Court recalled the jurors and modified the original charge made.[4]

The Court will, therefore, consider the first assignment of error—Did the Court commit error in refusing to dismiss Count II of the Indictment where Title 50 U.S.C.A. Appendix § 618, was not in effect on December 19, 1941, or under these circumstances could a crime have been committed as charged in Count II of the Indictment?

It is true that Count II of the Indictment charged that the defendant on or about the 19th day of December, 1941, committed certain acts which it was claimed by the Government constituted a violation of the law.

The testimony presented by the Government, more particularly that of Mrs. Hilda Frey, is to the effect that the letter was written by her at the direction of the defendant either during the first week after the defendant returned from Germany and came to her home on December 16, 1941, or on the 19th day of December, 1941;

---

[3] Whenever, during the present war, the President shall deem that the public safety demands it, he may cause to be censored under such rules and regulations as he may from time to time establish, communications by mail, cable, radio, or other means of transmission passing between the United States and any foreign country he may from time to time specify, or which may be carried by any vessel or other means of transportation touching at any port, place, or Territory of the United States and bound to or from any foreign country. Any person who willfully evades or attempts to evade the submission of any such communication to such censorship or willfully uses or attempts to use any code or other device for the purpose of concealing from such censorship the intended meaning of such communication shall, upon conviction, be fined not more than $10,000, or, if a natural person, imprisoned for not more than ten years, or both; and the officer, director, or agent of any corporation who knowingly participates in such violation shall be punished by a like fine, imprisonment, or both, and any property, funds, securities, papers, or other articles or documents, or any vessel, together with her tackle, apparel, furniture, and equipment, concerned in such violation shall be forfeited to the United States."

[4] "You will have with you, ladies and gentlemen of the jury, the indictment and inadvertently I omitted to call your attention to the fact that on a motion heretofore granted the following words were elided from both counts: 'In furtherance of a joint or common scheme or enterprise.' That has been marked on each one and that language will be excluded from the indictment. I think that covers it."

other testimony pertaining to the date of the writing of the letter was contained in the oral and written admissions of the defendant to the representatives of the Federal Bureau of Investigation, in which the date of the writing of the letter was stated by the defendant to be during the months of January, February or March of 1942. The contents of the letter being the same although in dispute as to when the letter was written.

It is true that Executive Order No. 8985 of the President, which made effective Section 618 of Title 50 U.S.C.A. Appendix, was dated December 19, 1941, and was not filed with the Federal Register until December 20, 1941, at 11:45 a. m., and was published in the daily issue of the Federal Register on December 23, 1941, Volume 6, page 6625. The filing of the Executive Order with the Federal Register on December 20, 1941, would make the order legally effective as of the hour and date of filing which would be at 11:45 a. m. on December 20, 1941. This Order implemented Section 618 of Title 50 U.S.C.A. Appendix.[5]

■ There is no question but what the position of the defendant would be well maintained if the evidence was solely confined to the date December 19, 1941, but the testimony was not definite that the letter in question was written on December 19, 1941. The witness, Mrs. Hilda Frey, in one part of the testimony stated the letter was written within the first week of the defendant's arrival which, if the jury be-

lieved this statement, could fix the date of the writing of the letter to be December 23, 1941, at which time the regulation would be in effect. Furthermore, the defendant's written admission set forth that the letter was written during the month of January, February or March of 1942. It is a general rule of law that where time is not an element of an offense, a variance between the date alleged and the date proved is not material and that proof of the commission of the crime on any day from the finding of the indictment, and within the statute of limitations, is sufficient. Cornett v. United States, 10 Cir., 7 F.2d 531; Ledbetter v. United States, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162; Marchant v. Lyles, 4 Cir., 85 F.2d 997.

■ The Indictment involved in this proceeding was returned or found by the Grand Jury on December 15, 1944, and the statute of limitations for the offenses charged in the Indictment was three years. As a result of which, testimony would be relevant to prove either of the offenses charged in both Counts of the Indictment between the period December 15, 1941, and December 15, 1944. Under the provisions of the Criminal Code of the United States the statute of limitations is three years next after said offenses shall have been committed unless the statute defining a crime provides otherwise. 18 U.S.C.A., § 582. The statutes in each of the Counts of the Indictment involved in this proceeding do not set forth a statute of limitations. Hence, the three

---

[5] Section 305 of Title 44 U.S.C.A., provides in part as follows: "(a) There shall be published in the Federal Register (1) all Presidential proclamations and Executive orders, except such as have no general applicability and legal effect or are effective only against Federal agencies or persons in their capacity as officers, agents, or employees thereof; (2) such documents or classes of documents as the President shall determine from time to time have general applicability and legal effect; and (3) such documents or classes of documents as may be required so to be published by Act of the Congress: Provided, That for the purposes of this chapter every document or order which shall prescribe a penalty shall be deemed to have general applicability and legal effect."

Section 307 of Title 44 U.S.C.A., further provides: "No document required under section 305(a) of this chapter to be published in the Federal Register shall be valid as against any person who has not had actual knowledge thereof until the duplicate originals or certified copies of the document shall have been filed with the Division and a copy made available for public inspection as provided in section 302 of this chapter; and, unless otherwise specifically provided by statute, such filing of any document, required or authorized to be published under section 305 of this chapter, shall, except in cases where notice by publication is insufficient in law, be sufficient to give notice of the contents of such document to any person subject thereto or affected thereby."

year period would have application to each of the Counts in said Indictment. United States v. Salberg, D. C., 287 F. 208.

■ We are, therefore, of the opinion that under the testimony produced by the Government, sufficient evidence exists on which the jury could base their finding that the offense complained of in the Indictment occurred at any time subsequent to December 15, 1941, or at any time during the first week after December 16, 1941, the farthest removed date being December 23, 1941 in the month of December, or during the months of January, February or March, 1942.

For the reason just mentioned, it is the belief of the Court that justification existed in refusing to dismiss Count II of the Indictment, and it is, therefore, believed that no error exists as to this point.

In connection with the second point raised by the defendant in which it is claimed that the Court erred in refusing to direct a verdict in favor of the defendant for the reason that no evidence existed under which the jury could be justified in finding the defendant guilty under either Count of the Indictment, the question raised herein has been generally referred to, as far as the testimony is concerned, in the discussion of the first point in which it is claimed that an error existed.

To recapitulate, Hilda Frey testified that the letter was written, and the references made that the defendant had arrived safely in the United States, either on December 19, 1941, or during the week subsequent to December 16, 1941, or, as admitted by the defendant in his written and oral statements to the members of the Federal Bureau of Investigation, during the months of January, February or March of 1942. That said letter was written by Mrs. Hilda Frey at the direction of the defendant or under his supervision, and was to be sent by Mrs. Hilda Frey to Mrs. Bertha Krepper, c/o Pastor Kloess, Barcelona, Spain. That Pastor Kloess at Barcelona, Spain, was to place the letter in the necessary channel for delivery to Mrs. Bertha Krepper in Germany, and Mrs. Bertha Krepper was to inform "Pastor Kaiser", which was a fictitious name for Walter Kappe, and other persons whose names could not be recalled, that the defendant had arrived safely in the United States. The defendant elected to present no defense nor did he take the witness stand and, therefore, the jury had before it the oral and written admissions of the defendant as to what the letter contained and when the letter was written at his request by the witness, Hilda Frey.

■ It, therefore, appears to the Court that sufficient evidence was presented upon which the jury could premise their verdict of "guilty" as to each of the Counts of said Indictment. It is, therefore, believed that no error existed on the part of the lower court in refusing to direct a verdict in favor of the defendant on the basis of the lack of any evidence sufficient to support the finding of the jury.

We will next consider the third point of error in which it is claimed that under Count I of the Indictment, the term "enemy" as used therein could not apply to the wife of the defendant for the reason that she is a citizen of the United States, residing in Germany.

"Trading with the Enemy Act", Oct. 6, 1917, c. 106, Paragraph 1, 40 Stat. 411, 50 U.S.C.A. Appendix § 2, provides as follows:

"The word 'enemy,' as used herein, shall be deemed to mean, for the purposes of such trading and of this Act—

"(a) Any individual, partnership, or other body of individuals, of any nationality, resident within the territory (including that occupied by the military and naval forces) of any nation with which the United States is at war, or resident outside the United States and doing business within such territory, and any corporation incorporated within such territory of any nation with which the United States is at war or incorporated within any country other than the United States and doing business within such territory.

"(b) The government of any nation with which the United States is at war, or any political or municipal subdivision thereof, or any officer, official, agent, or agency thereof.

"(c) Such other individuals, or body or class of individuals, as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States, wherever resident or wherever doing business, as the President, if he shall find the safety of the United States or the successful prosecution of the war shall so require, may, by proclamation, include within the term 'enemy'."

■ Subparagraph (a) of Section 2 of "Trading with the Enemy Act" specifically states that any individual of any nationality residing in any territory with which the United States is at war, or resident outside of the United States and doing business within such territory is an enemy. Under the provisions of Section 2, subparagraph (a), Congress without reservation placed no limitation on the word "enemy" and the President of the United States is not given any discretion or authority to specify or limit its application. We believe that since subparagraph (c) of Section 2 refers to such other individuals as the President of the United States may include within the term "enemy", that when President Wilson issued the proclamation of May 31, 1918, and referred as he did in its preamble to the authority vested in him by "Trading with the enemy act", he was dealing with the classification of individuals as contemplated in subparagraph (c) of Section 2, in which specific provision is made for directions of such nature by the President. This paragraph relates, as by its terms will appear, to individuals or class of individuals which the President in his discretion by proclamation deems advisable to include within the term "enemy", as may be natives, citizens, or subjects of any nation with which the United States is at war, other than citizens of the United States wherever resident or wherever doing business, if the President shall find the safety of the United States or the successful prosecution of the war so justifies. We believe that subparagraph (a) was intended to have specific application to any individual regardless of his nationality or citizenship and even if a citizen of the United States, if he was a resident within a territory of any nation with which the United States was at war.

We further believe that subparagraph (c) was to have application to any other situation which might arise where the President of the United States, in the interests of the well-being of this country deemed it advisable in the exercise of his discretion to declare such a person an enemy of the United States. An example would be a citizen of Germany, Italy, Japan or any of the satellite countries, which would fall under the general expression "Axis Powers", who would be residing in the United States or in any country which might be neutral, but circumstances existed in that country which the President believed would justify said persons who were citizens of one of the Axis Powers being designated as an enemy of the United States. Also we believe said section would have application to residents of neutral countries being declared enemies where the circumstances justified, other than citizens of the United States. An example would have been residents of Spain or Switzerland.

In matters involving property rights of American citizens residing in a country at war with the United States, it has been consistently held that the term "individual resident" in a statute included as enemies individual residents within the territory of a nation with which the United States was at war and, therefore, applied to citizens of the United States as well as aliens under the provisions of "Trading with the Enemy Act", Section 2. Faber v. United States, 10 F.Supp. 602, 81 Ct.Cl. 142; Noble et al. v. Great American Insurance Co., 200 App. Div. 773, 194 N.Y.S. 60, affirmed, 235 N.Y. 589, 139 N.E. 746; In re Gregg, 266 Pa. 189, 109 A. 777, certiorari denied Gregg v. Garvan, 252 U.S. 588, 40 S.Ct. 396, 64 L.Ed. 730.

■ Even if it were assumed that the defendant could not be guilty of a violation of the statute for the reason that he had directed a letter to be written to his wife, who was an American citizen, the facts and circumstances clearly indicate that the message set forth in the letter to the wife of the defendant was to convey some information to "Pastor Kaiser" which was purely a code phrase for his friend, Walter Kappe. Furthermore, the letter was being forwarded to a Pastor Kloess in Barcelona, Spain,

and it is apparent that Pastor Kloess is connected in one way or the other with the defendant and the German Government. There is no evidence in the record to show that Pastor Kloess was a citizen of Germany, residing in the Country of Spain, but the communication written at the direction of the defendant was intended in the first instance to be delivered to Pastor Kloess, and in the second instance to Walter Kappe under the name of "Pastor Kaiser", who was definitely a resident of Germany. In other words, the message or contents in the letter was in reality being written to Pastor Kaiser, alias Walter Kappe, through Pastor Kloess, so that the wife of the defendant would be only an agent or intermediary for the defendant to write to Pastor Kaiser who, without question, was not a citizen of the United States.

It is, therefore, the opinion of this Court that the third assignment of error should be refused, and that the term "enemy" would have application to a citizen of the United States residing in Germany at time of war, and that the facts and circumstances clearly indicate that the letter was directed primarily for delivery to Pastor Kaiser, alias Walter Kappe, a resident of Germany, through Pastor Kloess, a resident of Spain, and Mrs. Bertha Krepper, wife of the defendant, a resident of Germany.

It is next contended that the First Count of the Indictment is invalid because of the fact that there is an exception contained in the statute, and the Indictment does not allege that the defendant is not within the exception nor was there any proof to that effect.

 In support of the contention that the First Count of the Indictment is invalid, the defendant relies on the rule of law that if exceptions are stated in the enacting clause, it will be necessary to negative them in order that the restriction of the crime may in all respects correspond with the statute. Furthermore, offenses created by statute, as well as offenses at common law, must be accurately and clearly described in an indictment. So if they cannot be in any case without an allegation that the accused is not within an exception contained

in the statute defining the offense, it is clear that no indictment founded upon the statute can be a good one which does not contain such an allegation, as it is universally true that no indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offense is composed. United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 27 L.Ed. 520; United States v. Cook, 84 U.S. 168, 17 Wall 168, 21 L.Ed. 538.

The Cook case which was decided in 1872, in our judgment, does not contain the rule of law as presented by the defendant. It holds, as we read it, that if it is impossible to frame the statutory charge without negativing the exception, then it should be negatived; but where, as here, the statute states a clear, definite and general offense and then excepts certain clauses or acts from its scope, the exception need not be negatived.

Defendant also places reliance on the case of United States v. Britton, 107 U.S. 655, 2 S.Ct. 512, 524, 27 L.Ed. 520, which case was decided in 1883. The Supreme Court stated that "When a statute contains provisos and exceptions in distinct clauses it is not necessary to state in the indictment that the defendant does not come within the exceptions, or to negative the provisos it contains. On the contrary, if the exceptions themselves are stated in the enacting clause it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute." Furthermore, "Where a statute declared that if one on the Sabbath day 'shall exercise any secular labor, business, or employment, except such only as works of necessity and charity, he shall be punished,'" a negative of the exception was held indispensable.

 We do not believe that the facts in the Britton case can be held analogous in any respect to the facts which are presented in the matter now before the Court for consideration. We furthermore believe that the present law is best expressed as follows: That an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right

968

conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same action or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it. The statute involved in this case states a clear, definite and general offense, and if the defendant claims to be within any of the exceptions, it is the duty of the defendant to assert and establish such claim. Nicoli v. Briggs, 10 Cir., 83 F.2d 375; Seele v. United States, 8 Cir., 133 F.2d 1015; United States v. Van Den Berg, 7 Cir., 139 F.2d 654; McKelvey et al. v. United States, 260 U.S. 353, 356, 43 S.Ct. 132, 67 L.Ed. 301; Edwards v. United States, 312 U.S. 473, 483, 61 S.Ct. 669, 85 L.Ed. 957; United States v. Ryals, D.C., 56 F.Supp. 772; United States v. Winnicki, 7 Cir., 151 F.2d 56.

We do not believe it a matter of importance whether the excepting clause is in parentheses, or set off by commas at the beginning of the sentence or follows a proviso at the end, where the statute states a clear, definite and general offense such as exists in both of the statutes with which we are concerned in each of the Counts of said Indictment now being considered.

The object of an indictment is first to furnish the accused with such a description of the charge against him as will enable him to prepare his defense and to plead his acquittal or conviction in bar of further prosecution for the same offense; and second, to inform the court of the charges so that it may decide whether they are sufficient in law to support a conviction. Appraised in terms of its function, such an indictment is sufficient. No harm is done to a defendant charged as this defendant was, with all the precise details furnished him by this indictment. He would know full well if he had obtained the necessary authority from the Government to send, take or transmit, or attempt to send, take or transmit out of the United States the letter in question, he would also know whether or not he was a person in the service of the United States Government or whether he had been exempted by the President or any other duly constituted governmental agency from complying with the

provisions of the law. That is what the real simple factual issue was. He knew it. His lawyer knew it. At the trial, if the defendant was within any of the excepting provisions, it would have been a very simple matter for him to have proved the fact. United States v. Winnicki, 7 Cir., 151 F.2d 56.

The fourth assignment of error is overruled, and the ruling of the lower court is, therefore, sustained.

The fifth and last assignment of error made by the defendant is that the Court erred in granting the motion of the United States Attorney to strike from each of the two Counts of the Indictment the words, which appear in green pencil brackets in each of said Counts, "in furtherance of a joint or common scheme or enterprise".

In considering this question it is well to remember that on March 9, 1945, which was four days prior to the trial, this motion, was made in the presence of counsel for the defendant, and it was explained in detail to the Court that four additional Indictments had been returned against the defendant, more particularly Indictments Nos. 2885c, 2886c, 2999c and 3000c.

In view of the reference made in the record of this case to other indictments returned against the defendant, we believe it necessary for the Court to take judicial knowledge of said indictments, and some reference will, therefore, be made thereto.

Indictments Nos. 2884c (which is the Indictment involved in the matter now before the Court), 2885c and 2886c were returned simultaneously against the defendant by the Grand Jury on December 20, 1944, in the United States District Court for the District of New Jersey. Indictment No. 2885c charged the defendant with violating Title 22 U.S.C.A. § 601, which pertains to the "Foreign Agents Registration Act", and sets forth in detail that the defendant violated the provisions of said Act "from a date on or about the 16th day of December, 1941, and continuously and at all times thereafter until September 30, 1944". Indictment No. 2886c charged the defendant with violating Title 18 U.S.C.A. § 88, which is the "General Conspiracy Act" and, among other

things, alleges that the defendant conspired to violate Title 50 U.S.C.A. 102 and 105, and Title 50 U.S.C.A. Appendix, § 618, which are part of the censorship law and which is the basis for the offense of sending communications between the United States and a country at war with the United States by means of a code and other devices for the purpose of concealing the true and the intended meaning of such communications. It was set forth in this Indictment that "continuously and at all times from the first day of August, 1941, to September 30, 1944" the defendant violated the provisions of said Act. The defendant realized the unlawful acts referred to therein, and one of the overt acts referred to in the Indictment, more particularly Overt Act No. 4, was the same offense as the substantive offense set forth in each of the Counts of Indictment No. 2884c which is before the Court in this proceeding.

In addition to the three indictments just mentioned, additional indictments were returned against the defendant by the Grand Jury sitting in the United States Court for the District of New Jersey on January 10, 1945, more particularly Indictments Nos. 2999c and 3000c. Indictment No. 2999c is exactly the same in every respect as Indictment No. 2884c with the exception that the date of the substantive offense is set forth to be on or about the 15th day of January, 1942; the date of the offense set forth in Indictment No. 2884c is the 19th day of December, 1941. Indictment No. 3000c contains also a conspiracy charge and is exactly the same as Indictment No. 2886c with the exception that the period of the conspiracy set out in Indictment No. 3000c commenced on the 1st day of August, 1941 and continued to the date of the date of the filing of the Indictment on January 10, 1945. Paragraph Four of the Overt Acts referred to in Indictment 3000c is exactly the same in every respect as the substantive offense set forth in Indictment 2884c which is before the Court for consideration.

It is, therefore, apparent that the defendant knew that Indictment No. 2884c (before the Court by virtue of this appeal) and Indictments Nos. 2885c and 2999c were direct charges of substantive violations of specific statutes, and that Indictment Nos. 2886c and 3000c charged the defendant with conspiracy. Without question, the Grand Jury, therefore, intended to charge the defendant with conspiracy in the two Indictments specified as Nos. 2886c and 3000c, and intended that Indictment Nos. 2884c, 2885c and 2999c were to be specific substantive charges of the statutes which were specified in each instance. By reference being had to the Indictments, we do not see how the defendant could have been misled in any way whatsoever since he had full realization that he was charged in other Indictments with the crime of conspiracy and that Indictment No. 2884c, for which he stood trial and which is before the Court, was a substantive offense against the defendant individually. His wise and able counsel fully realized this fact when a statement was being made to the Court that no objection was being offered to the granting of the motion to delete the phrase "in furtherance of a joint or common scheme or enterprise" for the reason that such phraseology was, without question, surplusage.

 This Court raised the above question for the reason that jurisdiction is always a matter with which the Court should be concerned regardless of the facts and circumstances. This is true for if the allowance of the deletion in the Indictment amounted to a change in substance and not in form, there would be nothing before the lower court in the indictment for trial. It is primarily the duty of the Court at all times to throw a cloak of protection around the defendant as provided by the Fifth Amendment of the Constitution for the reason that the federal courts are without power to alter or amend indictments found by a grand jury; to hold otherwise, the rights of persons charged with infamous crimes to be prosecuted only upon presentment by a grand jury as guaranteed by the Fifth Amendment of the Constitution would be defeated.

In this case although there was no physical striking of the portion of the Indictment which was deleted by the order of the Court, nevertheless the part in question was placed in brackets with a green pencil

crayon on the Indictment which the jury took to the jury room with them for consideration, and further the Court immediately following the retirement of the jury after its charge recalled the jurors and further instructed them thus: "You will have with you, ladies and gentlemen of the jury, the indictment and inadvertently I omitted to call your attention to the fact that on a motion heretofore granted the following words were elided from both counts: 'in furtherance of a joint or common scheme or enterprise'. That has been marked on each one and that language will be excluded from the indictment. I think that covers it."

 It has long been the settled rule of law in the United States Courts that the Declaration of Article 5 of the Amendments to the Constitution that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" is jurisdictional and no court of the United States has authority to try a prisoner without indictment or presentment in such cases. The indictment is. the presentment to the proper court, under oath, by a grand jury, duly impanelled, of a charge describing an offense against the law for which the party charged may be punished. When an indictment is filed with the court, no change can be made in the body of the instrument by order of the court, or by the prosecuting attorney, without a re-submission of the case to the grand jury. It is also settled that although the court may deem the change immaterial, as striking out of surplus words, it makes no difference. Where it amounts to a substantive change, the instrument, as thus changed, is no longer the indictment of the grand jury which presented it. This was the doctrine of the English courts under the common law. It is the uniform ruling of the United States Courts except where statutes prescribe a different rule, and it is the imperative requirement of the provision of the Constitution above recited, which would be of little avail if an indictment once found can be changed by the prosecuting officer, with consent of the court, to conform to their views of the necessity of the case. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.

In considering the question as to whether or not the phrase deleted was surplusage, or if the phrase affects the substance of the Indictment, it is necessary to refer to each of the Counts of Indictment.

Count I of the Indictment sets forth that the defendant on or about the 19th day of December, 1941, did two things:

1. That without obtaining the prior license or consent of the President of the United States of America, the defendant did unlawfully send and transmit and attempt to send and transmit out of the United States certain communications.

2. That the defendant did cause persons acting at his instigation and under his direction and control and on his behalf and in furtherance of a joint or common scheme or enterprise, to send and transmit and attempt to send and transmit out of the United States certain communications.

Count II of the Indictment sets forth that the defendant on or about the 19th day of December, 1941, did two things:

1. That the defendant unlawfully, willfully and knowingly did use and attempt to use in a communication between the United States and Germany, being sent by the defendant, a code and other devices for the purpose of concealing from censorship, under rules and regulations established by the President of the United States, the true and intended meaning of such communications.

2. That the defendant unlawfully, willfully and knowingly attempted to use in a communication between the United States and Germany, being sent by persons acting at his instigation and under his direction and control and on his behalf and in furtherance of a joint or common scheme or enterprise, a code and other devices for the purpose of concealing from censorship, the true and intended meaning of such communications.

 It is a settled proposition of law that an indictment is amended only when it is so altered to charge a different offense from that found by the grand jury. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849.

■ It is also a settled proposition of law that when an indictment charges several offenses, or the commission of one offense in several ways, the withdrawal from the jury's consideration of one offense or one alleged method of committing it does not constitute a forbidden amendment of the indictment. Goto v. Lane, 265 U.S. 393, 403, 44 S.Ct. 525, 68 L.Ed. 1070; Ford v. United States, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793.

In view of the motion made by counsel for the Government, the purpose of which was not to alter or change the indictment but to show that the parties construed and understood the acts or accusations in a particular way, and in view of the fact that each Count of the Indictment charged the commission of the offense in two different ways, it would appear to be a far fetched strain of imagination to hold that the substance of the Indictment had been altered, modified or changed. Were the rule otherwise, the common practice of withdrawing from the jury's consideration one Count of the Indictment while submitting others for a verdict would be a fatal error. Dealy v. United States, 152 U.S. 539, 14 S.Ct. 680, 38 L.Ed. 545.

The true inquiry, therefore, is not whether there is a variance in proof, but whether there has been such a variance as to "affect the substantive rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense. Berger v. United States, 295 U.S. 78, 83, 55 S.Ct. 629, 79 L.Ed. 1314.

Prior to the time of the allowance of the amendment on March 9, 1945, the defendant had been tried and convicted on a conspiracy charge at Indictment No. 3000c. As stated before, one of the Overt Acts set forth in Indictment No. 3000c was the substantive offense set forth in Indictment No. 2884c.

The object of the Indictment was to furnish the accused with such a description of the charge against him as will enable him to prepare his defense and to plead his acquittal or conviction in bar of further prosecution for the same offense; furthermore, to inform the Court of the charges so that it may decide whether they are sufficient in law to support a conviction. The said defendant, therefore, knew, as did his able counsel, when no objection was finally made to the Court to the deletion from the Indictment of the phrase "in furtherance of a joint or common scheme or enterprise" that the two acts under which the Indictment was drawn did not contain or refer to any charge of conspiracy. In view of all the facts and circumstances, the accused could not have been taken by surprise and he definitely was not in doubt or could any question exist as to what was the definite offense for which he was then being tried.

■ It is, therefore, the belief of the Court that in each of the Counts of said Indictment the substantive charge of which the defendant is accused has been set forth in particularity and with sufficient definiteness to inform the defendant of the charges for which he was to stand trial. Furthermore, the phrase "in furtherance of a joint or common scheme or enterprise" was surplusage and did not amount to a change in the substance of the Indictment since at the most it referred only to one of the ways in which the defendant violated the statutes in question.

It would appear to us to be unsound and severely prejudice the fair administration of justice to permit the defendant to question the legal sufficiency or propriety of the Indictment when he did not make such objection but, in fact, consented to the amendment before he was in jeopardy. It is impossible to conclude that his rights were affected or prejudiced since he well knew the offense for which he was to be tried. Since we do not believe there has been any interference with the intention of the Grand Jury, he is not now entitled to a ruling which would give him a defense

of double jeopardy and permanently bar prosecution for said offense.

Although the facts in this case are such that it has been argued that the defendant did not actually write the communication involved in this proceeding, without question, his actions were similar to that of an individual giving dictation and Mrs. Hilda Frey fulfilled the stenographic or clerical functions for the defendant in doing that which he directed. This is so apparent that no further discussion or consideration of the matter is necessary.

For reasons heretofore given, the fifth assignment of error is, therefore, refused.

We, therefore, conclude that the defendant-appellant had a fair, just and impartial trial, and no cause for reversal has been found to exist in the record, and in view of our rulings in connection with the assignments of error, judgment of the court below is affirmed.